UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABER SAFINEJAD,<br><br>        Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE; DANIEL A. BRIGHTMAN; TODD LYONS; KRISTI NOEM; and PAMELA BONDI,<br><br>        Respondents. | Case No.: 26-cv-531-JES-AHG<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF No. 1] |

  Before the Court is Petitioner Saber Safinejad's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's order to show cause, Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 4, 5. After due consideration and for the reasons stated below, the Court **GRANTS** the petition.

## I.  BACKGROUND

  Petitioner is a native of Iran who entered the United States on February 20, 2025, in order to claim asylum. ECF No. 1 at 5. He was detained at that time, and has since remained in detention at the Otay Mesa Detention Center ("OMDC"). *Id.* He has applied for asylum, withholding of removal, and protection under the Convention Against Torture, but all

claims were denied by an Immigration Judge ("IJ") on January 6, 2026. *Id.* at 6. He is currently appealing that decision with the Board of Immigration Appeals ("BIA"). *Id.*

In his petition, Petitioner raises a due process claim regarding the length of his detention to date without a bond hearing. *Id.* at 6-14. He seeks the Court to order an immediate bond hearing. *Id.* at 15.

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.  DISCUSSION

In Respondents' return to the petition, they raise the following arguments: (1) Petitioner's claim is jurisdictionally barred by 8 U.S.C. § 1252; (2) Petitioner is lawfully detained under § 1225; and (3) his detention has not become unconstitutionally prolonged as to violate due process. ECF No. 4. The Court will address each of these issues in turn.

### A.  Jurisdiction and Section 1252

The arguments with regards to jurisdiction being barred under 8 U.S.C. § 1252 are identical to those recently addressed by the undersigned in *Martinez Lopez v. Noem et al.*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2-3 (S.D. Cal. Oct. 30, 2025). The Court adopts it reasoning as to these issues and incorporates it by reference. *See also*

*Beltran et al. v. Noem et al.*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3-4 (S.D. Cal. Nov. 4, 2025) (holding same).

Accordingly, the Court finds that the jurisdiction stripping provisions of 8 U.S.C. § 1252 do not strip it of jurisdiction to hear Petitioner's claims.

### B.     Detention Under § 1225 and Length of Detention

Respondents argue that Petitioner is mandatorily detained pursuant to 8 U.S.C. § 1225(b) because he was detained at the border as an "applicant for admission" and he has never been granted any form of parole. ECF No. 4 at 6-7. Further, Respondents argue that Petitioner's detention has not become unconstitutionally prolonged. *Id.* at 7-11.

The Court agrees that Petitioner was detained at the border and has not been granted any form of parole, so Respondents have the authority to detain him under § 1225(b). However, the Court disagrees that no due process violation can therefore arise, as Respondents claim. ECF No. 4 at 5-6. Respondents essentially argue that § 1225(b) provides no limitation on the length of detention and that the statute provides all the due process that the petitioner is owed. *Id.* This position has been called into question by the Ninth Circuit:

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) (alteration in original). Indeed, numerous district courts have found that prolonged mandatory detention at some point will raise due process considerations. *See Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have

found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.") (internal citation omitted); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."). Further, even Respondents recognize in their return that district courts within this Circuit have found a potential due process violation to arise when the detention has become too prolonged. *See id.* at 9-11 (citing *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) and analyzing factors).

"Neither the Ninth Circuit nor the Supreme Court have provided guidance regarding the point at which an immigration detainee's prolonged mandatory detention becomes unconstitutional." *Amado v. United States Dep't of Just.*, No. 25CV2687-LL(DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025). Thus, district courts within this Circuit have employed similar but slightly varying tests. In the *Lopez* case cited by Respondents, the court employed a test with three factors to decide when mandatory detention under § 1226(c) becomes unconstitutionally prolonged: "the total length of detention to date, the duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." 631 F. Supp. 3d at 879. In *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019), the district court considered the following six factors in the § 1225(b) context: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." Other courts have simply applied the generalized *Mathews v. Eldridge*, 424

U.S. 319 (1976), procedural due process test. *See Henriquez v. Garland*, No. 22-cv-869-EJD, 2022 WL 2132919, at *5-6 (N.D. Cal. June 14, 2022).

The Court finds it most appropriate to apply the *Banda* test to Petitioner's detention here under § 1225(b), as other courts within this district have done in the past.[1] *See, e.g.*, *Amado*, 2025 WL 3079052, at *5 (applying 6-factor *Banda* test to mandatory detention under § 1225(b)); *Kadir v. LaRose*, 25CV1045-LL-MMP, 2025 WL 2932654 (S.D. Cal. Oct. 15, 2025) (same); *Gao v. LaRose*, No. 25-CV-2084-RSH-SBC, 2025 WL 2770633, at *4 (S.D. Cal. Sept. 26, 2025); *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025).

The <u>first</u> *Banda* factor, the length of detention, is "the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Petitioner has been detained since February 20, 2025, so his detention is just short of the one-year mark. While this factor itself is not dispositive, the length now is within the range such that this factor should weigh in favor of Petitioner. *Amado*, 2025 WL 3079052, at *5 ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" (citing cases) and finding detention of thirteen months to weigh in favor of the petitioner); *Sadeqi*, 2025 WL 3154520, at *3 (though "almost 12 months" detention was not dispositive, finding it to weigh in favor of petitioner); *Gao*, 2025 WL 2770633, at *5 ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Tonoyan v. Andrews*, No. 1:25-CV-00815-SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period . . . qualifies as prolonged."); *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("In general, '[a]s detention continues past a year,

---

[1] Even though the Court does not employ the *Lopez* test as Respondents cite, the Court notes that the *Lopez* factors are a subset of the *Banda* factors. Based on a discussion of the *Banda* factors below, the Court would reach the same conclusion even if it were to consider solely the *Lopez* factors because it finds the first two *Lopez* factors to weigh in favor of Petitioner and the last factor to be neutral.

courts become extremely wary of permitting continued custody absent a bond hearing.'") (citation omitted). In even the *Lopez* case cited by Respondents, that court found a detention of "approximately one year" to weigh in favor of the petitioner and recognizing that "[d]istrict courts have found shorter lengths of detention . . . without a bond hearing to be unreasonable." Thus, this first and most important factor weighs in favor of Petitioner.

The second *Banda* factor is the likely duration of future detention, and considers "anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119. Here, Petitioner has filed an appeal to the BIA and will have an opportunity to appeal to the Ninth Circuit as well. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020) ("The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed. . . . If that claim is rejected and the alien is ordered removed, the alien can appeal the removal order to the Board of Immigration Appeals and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals."). These appeals can take a long time. *See Banda*, 385 F. Supp. 3d at 1119 (finding appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer). Petitioner's position is identical to the *Banda* petitioner, where there was a final removal order from an IJ and he had just filed an appeal to the BIA. The *Banda* court concluded that this factor favored the petitioner under these circumstances, and the Court agrees here.

The third *Banda* factor is regarding the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at OMDC are "indistinguishable from penal confinement." *See Kydyrali*, 499 F. Supp. 3d at 773; *Amado*, 2025 WL 3079052, at *6. The Court finds that this factor also weighs in favor of Petitioner.

The fourth and fifth *Banda* factors look to the nature and extent of any delays in the removal proceedings caused the petitioner and then the government respectively. *Banda*,

385 F. Supp. 3d at 1119-1120. There is no indication in any of the filings before the Court that either Petitioner or Respondents caused any delays in the proceedings. Thus, the Court finds that both of these factors are neutral.

The sixth *Banda* factor looks to the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 ("In other words, the Court considers whether the noncitizen has asserted any defenses to removal."). Here, Petitioner argues that his appeal has a likelihood of success because the IJ's finding that he was not credible due to inconsistencies with his credible fear interview was due to interpreter errors. ECF No. 1 at 13-14. The Court is in no position to judge the likelihood of success of this argument, thus the Court finds this factor mostly neutral, weighing at most only slightly in favor of Petitioner.

In summary, at least three of the six factors weigh in favor Petitioner, with the other factors being neutral. Accordingly, the Court concludes that Petitioner's nearly year-long detention under § 1225(b) has become unreasonable and due process requires the Government to provide him with an individualized bond hearing at this time.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and **ORDERS** as follows:

(1) The Court **ORDERS** Respondents to provide Petitioner with an individualized bond determination hearing within **ten days** of this Order. At the hearing, the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released.[2]

---

[2] As courts have recognized, due process violations on this ground entitles Petitioner to a "a prompt and individualized bond hearing, at which Respondents must justify her continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released." *Sadeqi*, 2025 WL 3154520, at *4 (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)

Case 3:26-cv-00531-JES-AHG   Document 7   Filed 02/03/26   PageID.45   Page 8 of 8

  (2)  Respondents are **ORDERED** to File a Notice of Compliance within **<u>five days</u>** of providing Petitioner with the bond hearing, including apprising the Court of the results of the hearing.

The Clerk of Court is **ORDERED** to **CLOSE** this case.

  **IT IS SO ORDERED.**

Dated: February 3, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge

---

and *Martinez v. Clark*, 124 F.4th 775, 785-86 (9th Cir. 2024)); *see also Kadir*, 2025 WL 2932654, at *6 (ordering similar relief, including specifying proper standards to be applied at bond hearing); *Idiev v. Warden of the Golden State Annex Det. Facility*, No. 1:25-CV-01030-SKO (HC), 2025 WL 3089349, at *6 (E.D. Cal. Nov. 5, 2025) (ordering bond hearing where "the government must justify Petitioner's continued confinement under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a danger to the community").

8

26-cv-531-JES-AHG